IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**BILLIE FAYE KEYES, et al.**                                                                                  **PLAINTIFFS**

**V.**                                              **CIVIL ACTION NO. 3:16cv228 CWR-LRA**

**PHILIP GUNN, et al.**                                                                              **DEFENDANTS**

**BRIEF IN SUPPORT OF MOTION TO DISMISS
FOR FAILURE TO STATE A CLAIM ON THE BASIS OF IMMUNITY**

In adopting the Civil Rights Act of 1871, now codified as 42 U.S.C. § 1983, Congress did not intend to abrogate the immunity for legislative conduct that had been recognized in the English-speaking world for centuries. *Tenney v. Brandhove*, 341 U.S. 367 (1951). It follows that the House and its Members cannot be sued under § 1983 for their conduct in resolving the election contest between former Representative Blaine "Bo" Eaton and Representative Mark Tullos.

**STATEMENT OF THE CASE**

The five plaintiff voters allege that defendants "deprived plaintiffs of their federal constitutional right to vote and to have equal protection of the law." Complaint ¶ 3 [Dkt. 1]. This deprivation allegedly resulted from the disposition of an election contest filed with the House by Mark Tullos to contest the apparent election of Blaine "Bo" Eaton as Representative from District 79. Complaint ¶¶ 5-6. Defendant Speaker Philip Gunn appointed defendants Mark Baker, Richard Bennett, Charles Jim Beckett, and Bill Denny as members of a Special Committee to consider the contest. Complaint ¶¶ 16-17.[1]

The Special Committee adopted a resolution recommending the seating of Representative Tullos. That resolution reported that five ballots had been illegally counted, contrary to the

---

[1] The fifth Member of the Special Committee, Representative Linda Coleman, is no longer a Member of the House, having been appointed by Governor Bryant as a Circuit Judge.

provisions of Miss. Code Ann. § 23-15-13 (Rev. 2015). The full House voted to seat Representative Tullos on February 20, 2016. Complaint ¶ 8.

These are the acts which plaintiffs claim to have violated "their constitutional right to vote and to equal protection under the law pursuant to the United States Constitution." Complaint ¶ 18. The complaint contains no allegation that any defendant did anything outside of the official functions of the House. The prayer of their complaint requests the determination of "Blaine 'Bo' Eaton to be the lawful Representative of House District 79 . . . and that his position in the Mississippi House of Representatives be restored unto him."

## ARGUMENT

**I. THE FIVE DEFENDANT MEMBERS HAVE ABSOLUTE LEGISLATIVE IMMUNITY FOR THE ALLEGED CONDUCT.**

In *Tenney*, the Supreme Court of the United States determined the intent of Congress in adopting § 1983 as part of the Civil Rights Act of 1871.[2] Plaintiff Brandhove sued a committee of the California Senate and the Members of that committee. Brandhove claimed that he had been called before the committee, not for a legitimate legislative purpose, but "to intimidate and silence plaintiff and deter and prevent him from effectively exercising his constitutional rights of free speech and to petition the Legislature for redress of grievances, and also to deprive him of the equal protection of the laws, due process of law, and of the enjoyment of equal privileges and immunities as a citizen of the United States under the law." *Id.*, at 371.

Notwithstanding these serious allegations, the Supreme Court reversed the decision of the Ninth Circuit that the complaint stated a claim. Justice Frankfurter's opinion reviewed centuries of English history in which the immunity of Members of Parliament was established. *Id.*, at 372.

---

[2] The Court began its opinion by quoting the statutory language now codified as § 1983. When *Tenney* was decided, the 1871 Act had been codified in a different section of the United States Code. 341 U.S. at 369.

2

The opinion noted the immunity provided by the Speech and Debate Clause found in Article I, § 6 of the United States Constitution, as well as similar provisions in the Constitutions of several States. *Id*., at 372-75. The opinion then reasoned:

> Did Congress by the general language of its 1871 statute mean to overturn the tradition of legislative freedom achieved in England by Civil War and carefully preserved in the formation of State and National Governments here? Did it mean to subject legislators to civil liability for acts done within the sphere of legislative activity? . . . These are difficulties we cannot hurdle. The limits of §§ 1 and 2 of the 1871 statute . . . were not spelled out in debate. We cannot believe that Congress – itself a staunch advocate of legislative freedom – would impinge upon a tradition so well grounded in history and reason by covert inclusion in the general language before us.

*Id*., at 376.

Having established the intent of Congress, the Court turned its attention to whether the alleged conduct fell within "the sphere of legitimate legislative activity." *Id*. The Court found committee investigations to be "an established part of representative government," *id*., at 377 (footnote omitted), and concluded that "[t]he claim of an unworthy purpose does not destroy the privilege." *Id*. Conceding the possibility of abuse, the Court nevertheless denied plaintiff the right to proceed further:

> Courts are not the place for such controversies. Self-discipline and the voters must be the ultimate reliance for discouraging or correcting such abuses. The courts should not go beyond the narrow confines of determining that a committee's inquiry may fairly be deemed within its province. To find that a committee's investigation has exceeded the bounds of legislative power it must be obvious that there was a usurpation of functions exclusively vested in the Judiciary or the Executive.

*Id*., at 378.

The application of *Tenney* to these facts seems perfectly clear. Defendants did not usurp "functions exclusively vested in the Judiciary or the Executive." To the contrary, the power to determine the qualifications of its Members is vested exclusively in the House by Art. 4, § 38, Miss. Const. (1890). Congress in 1871 would certainly have understood the power to judge

3

elections to be part of the legislative function, as the same power is vested in each House of Congress by § 5 of Article I of the United States Constitution. Just as the Committee Members were declared immune in *Tenney*, so too are the four Members sued here and the Speaker who appointed them to the Special Committee.

    Plaintiffs cannot save their complaint by asserting that they seek only declaratory and injunctive relief, not damages. In another legislative immunity case under § 1983, the Supreme Court said, "Although *Tenney* involved an action for damages under § 1983, its holding is equally applicable to § 1983 actions seeking declaratory or injunctive relief." *Supreme Court of Virginia v. Consumers Union of the U.S., Inc.*, 446 U.S. 719, 732 (1980) (footnote omitted). Plaintiffs had sued the Virginia Court and its Chief Justice for their adoption of rules of discipline for the State Bar, an act which the Supreme Court of the United States described as having been taken "in a legislative capacity." *Id.*, at 731. Legislative immunity extends to claims for injunctive and declaratory relief because "a private civil action, whether for an injunction or damages, creates a distraction and forces [legislators] to divert their time, energy, and attention from their legislative tasks to defend the litigation." *Id.*, at 733, quoting *Eastland v. United States Servicemen's Fund*, 421 U.S. 491, 503 (1975).[3] The Supreme Court of the United States recognized legislative immunity because "the Virginia Court is exercising the State's entire legislative power with respect to regulating the Bar and its members are the State's legislators for the purpose of issuing the Bar Code." 446 U.S. at 734. Here, too, the State's entire power to resolve disputes over elections to the House is vested in the House itself.

---

[3] It makes no difference that a plaintiff may purport to be suing a defendant in his official capacity, a fiction that these plaintiffs do not bother to employ in their complaint. In a later decision, the Supreme Court recognized that the Chief Justice in the *Supreme Court of Virginia* case, had been sued "in his official capacity," but the Court nevertheless found "that absolute legislative immunity shielded these defendants for acts taken in their legislative capacity." *Kentucky v. Graham*, 473 U.S. 159, 164 (1985).

The Third Circuit applied these principles to dismiss a § 1983 claim brought against Members of the Pennsylvania Senate in *Larsen v. Senate of the Commonwealth of Pennsylvania*, 151 F.3d 240 (3d Cir. 1998). There, the Pennsylvania House of Representatives impeached a Justice of the Supreme Court, and the Senate convicted him and removed him from office. *Id.*, at 243-44. The Court first found that an impeachment trial is a legitimate legislative activity to which the doctrine of legislative immunity would ordinarily apply. *Id.*, at 249-52. The Court then concluded that the *Supreme Court of Virginia* case applied "absolute legislative immunity to claims for prospective relief." *Id.*, at 252. The Court therefore ordered dismissal of the claims against the Senators.[4]

The Third Circuit later followed *Larsen* and the *Supreme Court of Virginia* case in dismissing on the basis of legislative privilege a suit against the Governor who had signed the legislation abolishing New Jersey's office of poet laureate. *Baraka v. McGreevey*, 481 F.3d 187 (3d Cir. 2007). Plaintiff claimed to be suing the Governor in his official capacity for reinstatement to his office. Rejecting his claim, the Court said:

> Like the relief sought in *Larsen*, the relief sought by Baraka would infringe on the role of the New Jersey Legislature. Baraka seeks to require New Jersey legislators to rescind their votes repealing the statute and to enact legislation recreating the position.

*Id.*, at 203. So, too, plaintiffs here seek to require Mississippi legislators to rescind their votes seating Representative Tullos so as to restore former Representative Eaton to his position. As in *Baraka*, then, "this case is an 'appropriate case' for application of legislative immunity to a claim for prospective relief." *Id.*, quoting *Larsen*, 152 F.3d at 254.

---

[4] The District Court had dismissed the claim against the Senate itself because of the Eleventh Amendment, an issue not reviewed on appeal. *Id.*, at 244-45.

5

Nor is the Third Circuit alone in applying legislative immunity to foreclose a claim for prospective restoration to office. In *Scott v. Taylor*, 405 F.3d 1251 (11th Cir. 2005), a former county commissioner challenged as racially discriminatory the redistricting statute which had resulted in her eviction from office. The Court followed *Larsen* in holding that, under *Supreme Court of Virginia* and *Kentucky v. Graham*, "the legislator defendants in the instant official capacity suit for prospective relief are entitled to absolute immunity." 405 F.3d at 1255 (footnote omitted). The Court observed that, without immunity, the legislators "would still face the not inconsiderable inconveniences and distractions of a trial," and concluded that "it makes sense to apply the doctrine regardless of the capacity in which a state legislator is sued." *Id*. at 1256.

Legislative immunity therefore protects these Members against all forms of relief claimed under § 1983.

## II. THE HOUSE ITSELF IS ALSO ENTITLED TO LEGISLATIVE IMMUNITY.

*Tenney* by itself does not resolve whether a legislative body is entitled to the same legislative immunity as are individual legislators. That is because Brandhove did not sue the California Senate, but only one of its committees and the Members of that committee.

Institutional immunity, however, is established by the *Supreme Court of Virginia* case. There, plaintiffs sued the Supreme Court itself for the exercise of its legislative authority, and the Supreme Court of the United States dismissed that claim. In so doing, the Supreme Court of the United States said:

> Thus, there is little doubt that if the Virginia Legislature had enacted the State Bar Code and if suit had been brought against the legislature, its committees, or members for refusing to amend the Code in the wake of our cases indicating that the Code in some respects would be held invalid, the defendants in that suit could successfully have sought dismissal on the grounds of absolute legislative immunity.

6

446 U.S. at 733-34 (footnote omitted).[5] Just as the Virginia Legislature would have been entitled to legislative immunity in such a case, so too is the Mississippi House of Representatives entitled to legislative immunity here.

In *Hall v. Louisiana*, 974 F. Supp. 2d 944 (M.D. La. 2013), Judge Jackson dismissed a § 1983 action brought against the Louisiana Legislature for its failure to engage in redistricting of elected judicial positions in Baton Rouge. In so doing, the Court addressed the question of "whether the Legislature is entitled to absolute legislative immunity from official capacity suits for prospective or injunctive relief." *Id*., at 955. Relying on the *Supreme Court of Virginia* case, as well as *Larsen*, the Court recognized that, whatever form of relief might be sought, "lawsuits brought against lawmakers creates a distraction and forces legislators to divert their time, energy, and attention from their legislative tasks to defend the litigation." *Id*., at 955-56. For that reason, "the Court concludes that the defense of legislative immunity may be asserted by the Legislature in this case." *Id*., at 956.

## CONCLUSION

For the reasons stated herein, all defendants are immune from suit under § 1983, and the complaint must therefore be dismissed.

This 10th day of May, 2016.

                              Respectfully submitted,

                              PHILIP GUNN, et al.

                        BY:   *s/Michael B. Wallace*
                              MICHAEL B. WALLACE (MSB #6904)
                              REBECCA HAWKINS (MSB #8786)
                              CHARLES E. COWAN (MSB #104478)

---

[5] Relying on *Supreme Court of Virginia*, the Sixth Circuit found the Supreme Court of Michigan to be entitled to legislative immunity in a § 1983 action. *Alia v. Michigan Supreme Court*, 906 F.2d 1100 (6th Cir. 1990).

                WISE CARTER CHILD & CARAWAY, P.A.
                Post Office Box 651
                Jackson, Mississippi 39205-0651
                Telephone: 601-968-5534
                Fax: 601-944-7738
                mbw@wisecarter.com
                rwh@wisecarter.com
                cec@wisecarter.com

                T. RUSSELL NOBILE (MSB #100682)
                WISE CARTER CHILD & CARAWAY, P.A.
                1105 30th Avenue, Suite 300
                Gulfport, Mississippi 39501-1817
                Telephone: 228-867-7141
                Fax: 228-867-7142
                trn@wisecarter.com

                ATTORNEYS FOR DEFENDANTS

## **CERTIFICATE OF SERVICE**

      I, Michael B. Wallace, hereby certify that I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to the following:

      John G. Corlew
      CORLEW MUNFORD & SMITH, PLLC
      P. O. Box 16807
      Jackson, MS 39236-6807
      jcorlew@cmslawyers.com

      William R. Ruffin
      P.O. Box 565
      Bay Springs, MS 39422-0565
      attywrr@bayspringstel.net

This the 10th day of May, 2016.

                *s/Michael B. Wallace*
                MICHAEL B. WALLACE