IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**BILLIE FAYE KEYES, et al.**                                            **PLAINTIFFS**

**V.**                                        **CIVIL ACTION NO. 3:16cv228 CWR-LRA**

**PHILIP GUNN, et al.**                                                  **DEFENDANTS**

**BRIEF IN SUPPORT OF MOTION TO DISMISS
FOR FAILURE TO STATE A CLAIM**

Five registered Smith County voters have filed this action under 42 U.S.C. § 1983, which provides a remedy for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." They claim that five Members of the Mississippi House of Representatives and the House itself "deprived plaintiffs of their federal constitutional right to vote and to have equal protection of the law." Complaint ¶ 3 [Dkt. 1]. Because there is no federal constitutional right to vote and because the complaint does not allege facts sufficient to establish a denial of equal protection of the laws, the complaint fails to state a claim and must be dismissed under Fed. R. Civ. P. 12(b)(6).[1]

**STATEMENT OF THE CASE**

This litigation arises from the resolution by the House of an election contest filed by Representative Mark Tullos against former Representative Blaine "Bo" Eaton. As plaintiffs allege, the vote for House District 79 was certified to the Secretary of State as a tie. Complaint ¶ 4. Pursuant to Miss. Code Ann. § 23-25-605 (Rev. 2015), the Governor and the Secretary

---

[1] Defendants have filed a separate motion under Fed. R. Civ. P. 12(b)(6) because all defendants are entitled to absolute legislative immunity. Separate motions have been filed because this Court should resolve immunity defenses under § 1983 before turning to the substantive merits of the claim. *Backe v. LeBlanc*, 691 F.3d 645 (5th Cir. 2012) (ordering resolution of immunity motion before beginning merits discovery).

presided over the drawing of straws, which resulted in the declaration of Representative Eaton's reelection. Complaint ¶ 5. Contending that he had won a majority of the lawful votes, Representative Tullos filed an election contest in the House, Complaint ¶ 6, pursuant to Art. 4, § 38, Miss. Const. (1890), and Rule 104B of the Rules of the House of Representatives.

Speaker Philip Gunn, named as a defendant, appointed defendants Mark Baker, Richard Bennett, Charles Jim Beckett, and Bill Denny to a Special Committee charged with considering the election contest. Complaint ¶¶ 16-17.[2] The Special Committee adopted a resolution recommending to the full House that Representative Tullos be seated, because it found that five ballots had been improperly counted in violation of Miss. Code Ann. § 23-15-13 (Rev. 2015). Complaint ¶ 8. That statute requires that registered voters who move to a new precinct in the same county more than thirty days before an election must notify the Clerk in writing of the new address in order to be entitled to vote in the new precinct. *Rush v. Ivy*, 853 So.2d 1226 (Miss. 2003). The House voted to seat Representative Tullos. Complaint ¶ 8.

Plaintiffs claim that defendants acted "in violation of their constitutional right to vote and to equal protection under the law pursuant to the United State Constitution." Complaint ¶ 18. They claim that the determination that the five rejected ballots were invalid contravenes an opinion of the Attorney General of Mississippi. Complaint ¶ 21.[3] Defendants seem to allege that the supposed misapplication of the Mississippi statute violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, as interpreted in *Bush v. Gore*, 531 U.S. 98 (2000). The prayer of their complaint asks this Court to "determin[e] Blaine 'Bo' Eaton to be

---

[2] The fifth Member, Representative Linda Coleman, is no longer a Member of the House, having been appointed by Governor Bryant as a Circuit Judge.

[3] The same paragraph alleges, without explanation, that the construction given by the House to § 23-15-13 has been rejected by the Help America Vote Act ("HAVA"), 52 U.S.C. § 21082, although it does not allege that defendants violated HAVA itself.

the lawful Representative of House District 79 . . . and that his position in the Mississippi House of Representatives be restored unto him."

## ARGUMENT

**I. PLAINTIFFS DO NOT ALLEGE THE DEPRIVATION OF A RIGHT SECURED BY THE CONSTITUTION OR LAWS OF THE UNITED STATES.**

As this Court well knows, § 1983 provides a remedy against any person acting under color of state law who subjects a person "to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." There is no doubt that the five defendant Members and the House itself acted under color of Mississippi law when they resolved the election contest filed by Representative Tullos against former Representative Eaton. The authority to resolve contests over election to the House is unambiguously vested in the House itself by Art. 4, § 38, Miss. Const. (1890). The controlling question is whether these five plaintiffs, who allege they voted for former Representative Eaton, Complaint ¶¶ 9-13, allege the violation of any rights secured by federal law.[4] They allege that the rejection of their ballots violated "their constitutional right to vote and to equal protection under the law." Complaint ¶ 18.

"[T]he right to vote in a state election, in itself, is not a right secured by the Constitution or federal law." *Johnson v. Hood*, 430 F.2d 610, 612 (5th Cir. 1970). The Fifth Circuit so ruled in rejecting a challenge under § 1983 by an unsuccessful candidate and "voters whose ballots were rejected." *Id*. The Court reasoned that "even an improper denial of the right to vote for a candidate for state office achieved by state action '. . . is not a denial of a right of property or liberty secured by the due process clause.'" *Id*., quoting *Snowden v. Hughes*, 321 U.S. 1 (1944). At the same time, the Court ruled that plaintiffs had not been deprived of equal protection by the enforcement

---

[4] Plaintiffs Courtney Rena Fortune, Karli Ford Matthews, and Shelton S. Matthews allege their belief that their ballots were invalidated. Complaint ¶ 19. Plaintiffs Billie Faye Keyes and Joshua Allen allege no such belief.

3

of a state law "which insures that citizens vote only in precincts in which they reside and are properly registered for a reasonable time prior to voting." *Id*., at 613. While the Court did not identify the Mississippi statute in question, it seems likely that it referred to the provision now codified as § 23-15-13.

In subsequent cases, the Fifth Circuit continued to emphasize that a proper equal protection claim requires a showing of intentional racial discrimination, a claim these plaintiffs do not make. In *Hubbard v. Ammerman*, 465 F.2d 1169, 1180 (5th Cir. 1972), the Court observed that, as here, the true dispute concerned "state issues, that is, what to do about counting the votes of those who had voted outside the precinct of their residence, a violation of state law." The Court found there to be "no substantial federal question" because "the District Court made no reference to racial discrimination or to the denial of the franchise to any individual on account of his race. Instead, the Court found only the 'possibility of fraud.'" *Id*., at 1181. Later, in a Mississippi case in which the successful candidate was convicted of voter fraud under state law, the Fifth Circuit nevertheless denied relief to the losing candidate in light of "the district court's findings that the defendants did not intend to discriminate on the basis of race," thereby necessitating "dismissal of the plaintiffs' claims under the Equal Protection Clause." *Welch v. McKenzie*, 765 F.2d 1311, 1315 (5th Cir. 1985).

In *Gamza v. Aguirre*, 619 F.2d 449 (5th Cir. 1980), the Fifth Circuit explained that ordinary mistakes in the application of state election law do not constitute a violation of the Equal Protection Clause. In that case, a substantial number of votes in three precincts had been miscounted because of mistakes in programming the voting machines, possibly resulting in the certification of the wrong candidate. *Id*., at 451. The Fifth Circuit acknowledged that a deprivation of the right to

4

vote conferred by state law could, in rare circumstances, constitute a violation of the Equal Protection Clause:

> The Supreme Court has recently made clear that the "right to vote" discussed in *Reynolds v. Sims*[, 377 U.S. 533 (1964),] must be understood as a narrow substantive right, conferred by the equal protection clause, "of a person to vote on an equal basis with other voters." *City of Mobile v. Bolden*, 446 U.S. 55, 78 (1980). We must, therefore, recognize a distinction between state laws and patterns of state action that systematically deny equality in voting, and episodic events that, despite non-discriminatory laws, may result in the dilution of an individual's vote.

*Id*., at 453. Such "isolated events" of "unlawful administration by state officers of a non-discriminatory state law" do not constitute ". . . 'a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination.'" *Id*., quoting *Snowden*, 321 U.S. at 8.

In support of this rule the Fifth Circuit relied upon *Powell v. Power*, 436 F.2d 84 (2d Cir. 1970). There, the Second Circuit reviewed a Democratic primary for Congress in which Charles Rangel had defeated Adam Clayton Powell by 150 votes, where the parties agreed that 1232 unqualified persons had voted. *Id*., at 85-86 & nn.1 & 2. Rejecting a claim under § 1983, the Second Circuit held, "Uneven or erroneous application of an otherwise valid statute constitutes a denial of equal protection only if it represents 'intentional or purposeful discrimination.'" *Id*., at 88, quoting *Snowden*, 321 U.S. at 8. Here, plaintiffs allege at most the "erroneous application of an otherwise valid" § 23-15-13. The Fifth Circuit's reliance on *Powell* makes clear that such an allegation does not meet the standard established in *Gamza* for the violation of the Equal Protection Clause.

There is no reason to believe that the general rule announced in *Gamza* was modified in any respect by *Bush v. Gore*, upon which plaintiffs rely. Complaint ¶ 21. Indeed, the Fifth Circuit has squarely stated that "the *Bush v. Gore* holding is limited to the facts at issue there – the 2000

5

presidential election. [531 U.S.] at 109." *Wyatt v. Dretke*, 165 Fed. Appx. 335, 340 (5th Cir. 2006). Although the Fifth Circuit has not yet had to apply *Bush v. Gore* in an election context,[5] there is no reason to believe that it would depart from the reading announced in *Wyatt*.

Indeed, *Bush v. Gore* falls squarely within the language of *Gamza* that prohibits "state action that systematically den[ies] equality in voting." 619 F.2d at 453. The Supreme Court emphasized that it was not addressing the question of disparities arising from the use of "different systems" by "local entities." 531 U.S. at 109. Much as a legislature may adopt a statute to be applied on a statewide basis, the Supreme Court of Florida had issued a statewide order. "When a court orders a statewide remedy, there must be at least some assurance that the rudimentary requirements of equal treatment and fundamental fairness are satisfied." *Id*. Because the order on its face compelled inequality, the Supreme Court found that "that the recount cannot be conducted in compliance with the requirements of equal protection." *Id*., at 110.

By contrast, plaintiffs here make no allegation that Mississippi has adopted an unconstitutional statute to apply statewide. They do not challenge the constitutionality of § 23-15-13, which determines the legality of their ballots; rather, they simply claim that the House misapplied it in this instance. They do not allege the sort of intentional or purposeful discrimination condemned in *Gamza*. 619 F.2d at 453. At most, this dispute represents one of those "episodic events that, despite non-discriminatory laws, may result in the dilution of an individual's vote." *Id*.

---

[5] The Fifth Circuit cited *Bush v. Gore* in *Young v. Hosemann*, 598 F.3d 184, 189 (5th Cir. 2010). There, plaintiffs argued that a provision of Mississippi law contravened the Equal Protection Clause as expounded in *Bush v. Gore*. Because the Fifth Circuit ruled that plaintiffs had improperly construed the substance of Mississippi law, *id*., at 191-92, it had no need to reach the constitutional question.

Under principles repeatedly applied by the Fifth Circuit, a misapplication of Mississippi law does not constitute a deprivation of federal rights for purposes of § 1983. The complaint therefore fails to state a claim.

## II. THE HOUSE PROPERLY APPLIED MISS. CODE ANN. § 23-15-13.

Plaintiffs claim that a misapplication of Miss. Code Ann. § 23-15-13 deprived them of a federal right. If the House properly applied § 23-15-13, the premise of their argument fails. In *Young v. Hosemann*, plaintiffs similarly claimed that a misapplication of Mississippi law deprived them of equal protection. 598 F.3d at 187. Judge Lee concluded that defendants were properly applying Mississippi law, *id*., at 191-92, so there was no need to reach the federal question. Here, too, this Court may dispose of this complaint by ruling that the House properly applied § 23-15-13.

The complaint is plain that plaintiffs are unhappy with the decision of the House, but it takes a little work to decipher their legal theory. They allege that the House rejected their ballots under § 23-15-13. Complaint ¶ 8. That statute reads in full:

> An elector who moves from one ward or voting precinct to another ward within the same municipality or voting precinct within the same county shall not be disqualified to vote, but he or she shall be entitled to have his or her registration transferred to his or her new ward or voting precinct upon making written request therefore at any time up to thirty (30) days prior to the election at which he or she offers to vote, and if the removal occurs within thirty (30) days of such election he or she shall be entitled to vote in his or her new ward or voting precinct by affidavit ballot as provided in Section 23-15-573.

Plaintiffs then allege that the House's construction of this statute "has been rejected by opinion of the Attorney General of the State of Mississippi." Complaint ¶ 21. Apparently, then, plaintiffs' legal theory is found in that opinion:

> Your question is what would occur if the change of residence occurs more than thirty (30) days prior to the election, but the elector does not request that his registration be transferred. Since pursuant to § 23-15-11 the person is a qualified elector and is entitled to vote at any election, it is the opinion of this office that he

> be entitled to vote by affidavit ballot in his "new" ward pursuant to Miss. Code Ann. § 23-15-573.

Letter of May 20, 1987, from Attorney General Edwin Pittman to Ronald G. Peresich, 1987 WL 121651 (Miss. A.G. 1987). Plaintiffs' position, then, is that some voters who moved between precincts in Smith County more than thirty days before the election were denied the right to have their affidavit ballots counted, even though the Attorney General had opined to the contrary.

Whatever merit that opinion may have enjoyed in 1987, it was superseded by the opinion of the Supreme Court of Mississippi in *Rush v. Ivy*, 853 So. 2d 1226 (Miss. 2003), which holds that § 23-15-13 should be enforced in accordance with its plain language. In a race for alderman in Belzoni, the Municipal Election Commission had excluded certain affidavit ballots, and the Circuit Court had affirmed their exclusion. The Supreme Court quoted with approval the opinion of Judge Gray Evans explaining the requirement of § 23-15-13 "that an *elector who moves from one ward or voting precinct to another ward within the same municipality or voting precinct within the same county must make a written request to the appropriate registrar to transfer his or her registration to their new ward or voting precinct*." *Id*., at 1234 (emphasis added by Supreme Court). None of the challenged voters made the written request required by § 23-15-13. *Id*., at 1233. The argument was made that one of the voters had changed to a new residence within the same ward, not moving to a new ward. The Supreme Court declared:

> If there had been sufficient information that Ethel (Lee) (Brown) Robinson had in fact just moved within the same ward without changing wards, arguably then Miss. Code Ann. § 23-15-13 would not have operated to bar this affidavit ballot. However, without more information, we conclude that it is not appropriate to resort to speculation to reverse the trial court's finding that Ethel (Lee) (Brown) Robinson's vote was precluded pursuant to Miss. Code Ann. § 23-15-13.

*Id*., at 1235.

The Supreme Court's affirmance of the exclusion of the ballot pursuant to § 23-15-13 is fully consistent with the plain language of the statute. Every word of a statute is presumed to have

meaning, and every effort should be made to give effect to that meaning. *Gilmer v. State*, 955 So. 2d 829, 835 (Miss. 2007); *Morgan v. State ex rel. Dist. Atty.*, 208 Miss. 185, 44 So. 2d 45, 49 (1950). The Attorney General's opinion that persons who had moved to a new precinct more than thirty days before an election without changing their address with the clerk were nevertheless "entitled to vote in his or her new . . . voting precinct by voting affidavit ballot" reads out of the statute the preceding clause: "if the removal occurs within thirty (30) days of such election." The Attorney General's opinion would allow persons who moved to a new precinct to vote by affidavit ballot whether or not they had moved within thirty days of the election. To the contrary, § 23-15-13 only allows a voter to vote by affidavit ballot "if the removal occurs within thirty (30) days of such election." The House committed no error of Mississippi law in rejecting ballots consistent with *Rush v. Ivy* and the plain language of § 23-15-13.

It is by no means clear what plaintiffs mean by their allegation that the construction given to § 23-15-13 by the House "has been rejected by the Help America Vote Act, 52 U.S.C. § 21082." Complaint ¶ 21. Subsection (a) of the cited section requires the allowance of provisional voting "in an election for Federal office" where a question arises about a voter's eligibility. Even though the federal statute on its face plainly does not apply to this state election, plaintiffs admit that Smith County voters were permitted to cast affidavit ballots. Complaint ¶ 14. Although § 21082(a), in the federal elections to which it applies, sets out certain procedural rights for voters who cast provisional or affidavit ballots, subsection (a)(4) specifically declares that the votes shall be counted only if "the individual is eligible under State law to vote." The Sixth Circuit has ruled that this statutory provision unambiguously recognizes that State law controls whether any particular ballot should be counted. "There is no reason to think that HAVA, which explicitly defers determination of whether ballots are to be counted to the States, should be interpreted as

9

imposing upon the States a federal requirement that out-of-precinct ballots be counted, thereby overturning the longstanding precinct-counting system in place in more than half the States." *Sandusky Cty. Dem. Party v. Blackwell*, 387 F3d 565, 578 (6th Cir. 2004).[6] Thus, while plaintiffs unquestionably had the right to cast an affidavit or provisional ballot, § 23-15-13 determines whether that ballot should be counted, and the House properly concluded that Mississippi law does not permit the counting of the ballots in question.

Plaintiffs, then, allege that the House improperly applied § 23-15-13 in excluding affidavit ballots. Under *Rush v. Ivy*, plaintiffs are wrong. Plaintiffs have therefore suffered no injury at all, certainly not a denial of any federal right. Their claim for relief under § 1983 must therefore be dismissed.

## CONCLUSION

Plaintiffs have not alleged a violation of federal law, and they have not alleged a violation of Mississippi law. Their complaint must therefore be dismissed for failure to state a claim upon which relief may be granted.

This 10th day of May, 2016.

          Respectfully submitted,

          PHILIP GUNN, et al.

BY:   *s/Michael B. Wallace*
       MICHAEL B. WALLACE (MSB #6904)
       REBECCA HAWKINS (MSB #8786)
       CHARLES E. COWAN (MSB #104478)
       WISE CARTER CHILD & CARAWAY, P.A.
       Post Office Box 651
       Jackson, Mississippi 39205-0651
       Telephone: 601-968-5534
       Fax: 601-944-7738

---

[6] The opinion reflects that the cited portion of HAVA was previously codified as 42 U.S.C. 15482. *Id.*, at 569-70.

mbw@wisecarter.com
rwh@wisecarter.com
cec@wisecarter.com

T. RUSSELL NOBILE (MSB #100682)
WISE CARTER CHILD & CARAWAY, P.A.
1105 30th Avenue, Suite 300
Gulfport, Mississippi  39501-1817
Telephone: 228-867-7141
Fax: 228-867-7142
trn@wisecarter.com

ATTORNEYS FOR DEFENDANTS

### CERTIFICATE OF SERVICE

I, Michael B. Wallace, hereby certify that I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to the following:

>John G. Corlew
>CORLEW MUNFORD & SMITH, PLLC
>P. O. Box 16807
>Jackson, MS 39236-6807
>jcorlew@cmslawyers.com
>
>William R. Ruffin
>P.O. Box 565
>Bay Springs, MS  39422-0565
>attywrr@bayspringstel.net

This the 10th day of May, 2016.

*s/Michael B. Wallace*
MICHAEL B. WALLACE