# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

**BILLIE FAYE KEYES, JOSHUA ALLEN,**
**COURTNEY RENA FORTUNE, KARLI FORD**
**MATTHEWS AND SHELTON S. MATTHEWS**                    **PLAINTIFFS**

**V.**                                    **CIVIL ACTION NO. 3:16cv228-CWR-LRA**

**PHILIP GUNN, ET AL**                                    **DEFENDANT**

---

## COMBINED MEMORANDUM IN RESPONSE TO DEFENDANTS MOTIONS TO DISMISS FOR LACK OF JURISDICTION (DKT # 4) FOR FAILURE TO STATE A CLAIM ON THE BASIS OF IMMUNITY (DKT # 6) AND FOR FAILURE TO STATE A CLAIM (DKT # 8)

---

The United States has a republican form of government.  U. S. Constitution Art. 4, § 4.  A republican form of government is one in which the administration of affairs is open to all citizens.  It is a democracy in which the sovereign power rests in its citizens.  Citizens exercise that sovereignty through the right to vote.

In fact, our democracy affords citizens only two ways to participate in their government:  (1) the right to vote; and (2) to serve on juries.[1]

## I.  THE RIGHT TO VOTE

Free and honest elections are the very foundation of our republican form of government.  *United States v. Classic*, 313 U. S. 299, 329 (1941) (Justice Douglas, dissenting)

---

[1]      The *Batson* line of cases began as a protection for litigants but evolved to protect from "the more expansive harm done to the excluded jurors and community at large."  *Mata v. Johnson*, 99 F. 3d 1261, 1269 (5th Cir. 1996).

The United States Supreme Court has consistently protected that right:

> Every voter's vote is entitled to be counted once. It must be correctly counted and reported. . . . The concept of political equality in the voting booth contained in the Fifteenth Amendment extends to all phases of state elections. *Gray v. Sanders*, 372 U. S. 368, 380 (1963).

> No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory, if the right to vote is undermined. *Wesberry v. Sanders*, 376 U. S. 1, 17 (1964).

> We therefore hold today that as a general rule, whenever a state or local government decides to select persons by popular election to perform governmental functions, the Equal Protection Clause of the Fourteenth Amendment requires that each qualified voter must be given an equal opportunity to participate in that election. *Hadley v. Junior Coll. Dist. of Metro. Kansas City, Mo.*, 397 U. S. 50, 56 (1970)

> The right to vote is protected in more than the initial allocation of the franchise. Equal protection applies as well to the matter of its exercise. Having once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another. *Bush v. Gore,* 531 U. S. 98, 104-05 (2000).

The Defendants contend that a United States District Court is impotent to protect a citizen's right to vote. Here, Defendants argue that the Eleventh Amendment prohibits a federal court from addressing denial of a federal constitutional right. They argue that the Mississippi House of Representatives has an absolute immunity to deny citizens of a constitutional right to vote. They allege that there is no federal constitutional right to vote

2

in a state election, citing *Johnson v. Hood*, 430 F. 2d 610, 612 (5th Cir. 1970).  But *Johnson v. Hood*, 430 F. 2d 610, 612 (5th Cir. 1970) addressed allegations of violation of due process of law.  The facts in the underlying case were stipulated.  The Court said that stipulation showed no basis for asserting the deprivation of rights secured by the Constitution or federal law.  Here the Plaintiffs clearly assert deprivation of the right to vote in contravention of the Equal Protection Clause of the United States Constitution.  They are entitled to develop at trial the evidence that supports those allegations.

As Defendants' observe,  *Johnson v. Hood*, 430 F. 2d 610, 612 (5th Cir. 1970) relies on the United States Supreme Court case of *Bell v. Hood*, 327 U. S. 678, 684 (1946).  There the Supreme Court in fact reversed lower court findings of lack of jurisdiction:

> That the issue thus raised has sufficient merit to warrant exercise of federal jurisdiction for purposes of adjudicating it can be seen from the cases where the Court has sustained the jurisdiction of the district courts in suits brought to recover damages for depriving a citizen of the right to vote in violation of the Constitution.

Defendants' allegation that there is no federal constitutional right to vote in a state election has been roundly rejected by the Fifth Circuit:

> "Undeniably the Constitution of the United States protects the right of all qualified citizens to vote, in state as well as in federal elections." . . . The Supreme Court has stated that qualified electors have not only a constitutional protected right to vote. . . . but also the concomitant right to have their votes counted.  . . *Gamza v. Aguirre*, 619 F. 2d 449, 452 (5th Cir. 1980).

Nor can those rights be arbitrarily and unlawfully rejected by the Mississippi Legislature for its own partisan purposes.

## II. __SUPREMACY CLAUSE__

There can be no doubt that the Supremacy Clause of the United States Constitution invests courts with the power to protect federal constitutional rights of citizens against contrary state action. As Chief Justice Marshall stated in *McCulloch v. Maryland*:

> . . . 'this Constitution, and the laws of the United States, which have been made in pursuance thereof, shall be the supreme law of the land,' . . . the members of the state legislatures . . . shall take the oath of fidelity to it.[2]

No better example of the primacy of federal constitutional law over the actions of a state legislative body is *Bond v. Floyd,* 385 U. S. 116 (1966). There the Georgia House of Representatives, relying on the same state constitutional provision the Defendants here rely on (House of Representatives shall be judge of its own elections) refused to sit Julian Bond because of statements made by him critical of the Vietnam War. The United States Supreme Court did not hide behind the Eleventh Amendment, or legislative immunity, but held that the Georgia House of Representatives could not exclude Mr. Bond in violation of his First Amendment right of free expression. Nor should the Mississippi House of Representatives be allowed to arbitrarily and capriciously deny citizens of their federal constitutional right to vote. The Mississippi House of Representatives does not have the power to elect its own

---

[2] U. S. Constitution Art. VI, § 3 requires members of the State legislature to take an oath to uphold the Constitution of the United States.

4

members in a manner which violates the federal constitutional rights of its citizens.  The Supremacy Clause prohibits it.

### III.  ELEVENTH AMENDMENT

When a state, or its agencies, or its officials, may be sued without violation of the Eleventh Amendment may be a judicial labyrinth, but it is crystal clear that federal courts have repeatedly exercised jurisdiction to protect federal rights.

In the seminal case of *Ex parte Young,* 209 U.S. 123, 160-61 (1908), the United States Supreme Court stated:

> The answer to all this is the same as made in every case where an official claims to be acting under the authority of the state. The act to be enforced is alleged to be unconstitutional; and if it be so, the use of the name of the state to enforce an unconstitutional act to the injury of complainants is a proceeding with the authority of, and one which does not affect, the state in its sovereign or governmental capacity.  It is simply an illegal act upon the part of the state official in attempting, by the use of the name of the state, to enforce a legislative enactment which is void because unconstitutional.
>
> . . . .
>
> If the question of unconstitutionality, with reference, at least to the Federal Constitution, be first raised in a Federal court, that court, as we think is shown by the authority cited hereafter, has the right to decide it, to the exclusion of all other courts.

Following *Ex Parte Young,* 209 U.S. 123, 160-61 (1908), the courts distinguish between actions which could impose a monetary remedy against a state for a past violation of legal duty, and actions which are prospective only.  Thus the Fifth Circuit has said:

> . . . the Court in *Young* held that enforcement of an
> unconstitutional law is by definition – commentators often
> describe it as a "fiction" – not an official act because the state
> cannot confer authority on its officers to violate the Constitution
> or federal law. *American Bank & Trust Co. of Opelousas v.
> Dent*, 982 F. 2d 917, 920-21 (5th Cir. 1993).

And in *KP v. LaBlanc*, 627 F. 3d 115, 124 (2010), the Fifth Circuit noted the Eleventh

Amendment exception which the United States Supreme Court carved out in *Ex Parte

Young:*

> The rule is based on the legal fiction that a sovereign state
> cannot act unconstitutionally. . . . Thus, where a state actor
> enforces an unconstitutional law, he is stripped of his official
> clothing and becomes a private person subject to suit.[3]

Here Plaintiffs seek no monetary award against the State of Mississippi or any agency

or instrumentality thereof. They seek to have their right to vote in a republican and

democratic form of government recognized. Their request for prospective relief is not barred

by the Eleventh Amendment.

The Defendants argue that *Papasan v. Allain*, 478 U. S. 265, 279 (1986) bars

Plaintiffs' claims under the Eleventh Amendment. It does not. The Court there noted that

"we look to the substance rather than to the form of the relief sought." The substance here

is not monetary relief but the violation of a constitutional right for which *Ex Parte Young*

provides a remedy. Justice Brennan, concurring in *Papasan*, commented on the confusion

in Eleventh Amendment cases:

---

[3]     The Court repeated this observation in *K. P. LeBlanc*, 729 F. 3d 427, 439 (5th Cir. 2013)

> The Court makes a valiant effort to set forth the principles that determine whether a particular claim is or is not barred by the Eleventh Amendment. . . . To my mind, the Court's restatement simply underscores the implausibility of the entire venture, for it clearly demonstrates that the Court's Eleventh Amendment jurisprudence consists of little more than a number of ad hoc and unmanageable rules bearing little or no relation to one another or to any coherent framework; indeed, the Court's best effort to impose order on the cases in this area has produced only the conclusion as "[f]or Eleventh Amendment purposes, the line between permitted and prohibited acts will often be indistinct"

The Defendants also cite *Perez v. Region 20 Education Service Center*, 307 F. 3d 318, 326-67 (5th Cir. 2002) where the Fifth Circuit notes that:

> The state need not be named party in a federal lawsuit, for a state's Eleventh Amendment immunity extends to any state agency or entity deemed an "alter ego" or "arm" of the state.

But *Perez* is a suit for damages, not prospective relief.  The suit there against the Region 20 Education Service Center, if successful, could only be satisfied by state monies, and the suit there was barred "because a principal goal of the Eleventh Amendment is to protect state treasuries."

As the Fifth Circuit aptly stated in *Young v. Hosemann*, 598 F. 3d 184, 189 (5th Cir. 2010):

> The Eleventh Amendment may be relevant to the appellants' state law claim, but it has no relevance to their claims seeking to vindicate federal rights and thereby the supremacy of federal law.

## IV.  **LEGISLATIVE IMMUNITY**

Defendants argue that they have absolute legislative immunity for their actions.  The

United States Supreme Court found no such immunity when the Georgia House of Representatives acting under the guise of electing its own members excluded Julian Bond. The legislative immunity doctrine is often discussed by courts in connection with the Speech or Debate Clause of the United States Constitution. (Art. I, § 6))  But that is not the issue here.  There is no challenge to the speech or debate right of any legislator.

The Defendants cite *Tenney v. Brandhove*, 341 U. S. 367, 376 (1951) which held state legislators conducting an investigation were acting within a proper legislative role and therefore immune.  But it noted that:

> This Court has not hesitated to sustain the rights of private individuals when it found Congress was acting outside its legislative role.

*Supreme Court of Virginia v. Consumers Union of the U.S., Inc.,* 446 U.S. 719, 736 (1980) also cited by the Defendants, discussed the capacity in which the Virginia Supreme Court promulgated rules (a legislative capacity) but because it also performed another role "the Virginia Court and its members were proper defendants in a suit for declaratory and injunctive relief, just as other enforcement officers and agencies were." *Eastland v. U. S. Servicemen's Fund*, 421 U. S. 491, 503-05 (1975) held congressional investigations to be within the sphere of legislative responsibility, and shielded by immunity, emphasizing the Speech or Debate Clause of the United States Constitution.  The Third Circuit decision in *Baraka v. McGreevey*, 481 F. 3d 187, 198-99 (3d Cir. 2007) found activities of the governor and his staff in urging the adoption of legislation to be within the legislative sphere.  The

8

Court distinguished legislative acts as being of a policy making and general scope, whereas a decision affecting a small number of persons or single individual does not implicate the legislative power, and the act takes on the nature of administration. In this case the acts of the Mississippi House of Representatives involved a single legislative seat and disenfranchisement of five voters, enough to change the outcome of the election. There was no policy making decision of a general scope.

The Eleventh Circuit in *Scott v. Taylor*, 405 F. 3d 1251, 1256-57 (11th Cir. 2005) found legislative immunity to apply for the prospective relief sought in that case, but noted that the legislator defendants had no role in enforcement or implementation of redistricting legislation. Thus, the Plaintiff there was "free to maintain her suit against the Board of Elections" and, if successful, "she will still be able to obtain all the relief she seeks." *Alia v. Michigan Supreme Court*, 906 F. 2d 1100, 1101-02 (6th Cir. 1990) found that the Michigan Supreme Court and its seven justices were entitled to legislative immunity when they conducted activity in the legislative sphere in the promulgation of mediation rules.

The Defendants cite no case which holds that it is a proper legislative function to elect its own membership. In fact, although the Mississippi Constitution contains the provision that says the House of Representatives can judge the election of its own members, it also says that it cannot elect anyone other than its own officers and the State Librarian. Miss. Const. § 99. Election to the legislature is not a legislative function. Election of a state's representatives is vested in the citizens of the State. Miss. Const. § 34. An argument that the

Mississippi House of Representatives may elect its own members leads to the absurd conclusion that the will of the voters in any legislative race can simply be ignored.  In the case before the Court that is precisely what the Defendants have done.  They denied citizens the right to have their votes counted to the extent necessary to change the result of an election.

The Defendants cited *Larson v. Senate of the Commonwealth of Pennsylvania,* 152 F. 3d 240 (3rd Cir. 1998).  Among other things, that court cited *Gomillion v. Lightfoot*, 364 U. S. 339, 347 (1960) where the United States Supreme Court stated:

> When a State exercises power wholly within the domain of state interest, it is insulated from judicial review.  But such insulation is not carried over when state power is used as an instrument for circumventing a federally protected right.

Furthermore, the immunity is for the benefit of the individual not the body.  Even were the Court to find the five individual defendants to have immunity, that immunity would not extend to the Defendant Mississippi House of Representatives.

In *Hughes v. Tarrant Cnty, Tex.*, 948 F. 2d 918, 920 (5th Cir. 1991) , the Fifth Circuit clearly articulated that "[n]ot all actions taken by an official with legislative duties. . . are protected by absolute immunity – only those duties that are functionally legislative."  The Fifth Circuit noted that some courts in determining between legislative and non-legislative acts distinguish between establishing a policy, act, or law and enforcing or administering it.  Election of a member to the House of Representatives is clearly not establishing a policy, act or law as noted above.  It is exercising the power of the public to elect its own

10

representatives.

## V. <u>STANDING</u>

The Defendants argue that the federal courts have no authority to address election disputes.  First of all, no matter what remedy this court may or may not choose to order, the complaint here is of the violation of the federal constitutional right of plaintiffs to vote.  The Plaintiffs did not invoke 28 U.S.C. §1344 which vests district courts with original jurisdiction to recover possession of any office, except certain enumerated offices including state legislative members.   The Defendants are disingenuous when they cite *Hubbard v. Ammerman*, 465 F. 2d 1169, 1181 (5th Cir. 1972) which holds that Plaintiffs not seeking to recover an office do not have standing to sue under that section.  The Court there notes:

> . . . we must here point out that Federal Courts do not intervene
> in state election contests for the purpose of deciding issues of
> state law, if no federal constitutional question is involved.

But here a federal constitutional question is involved.  The Plaintiffs have been denied their right to vote.  That right deserves this Court's validation regardless of what remedy it may choose to invoke.

One need look no further than the State of Mississippi to learn that federal courts do have, and do exercise, jurisdiction to set aside unconstitutional acts of a state.  For example, in *Ferguson v. Williams*, 343 F. Supp. 654, 656 (N. D. Miss. 1972), a three judge panel struck down a state law requirement that citizens had to reside in a state for one year and register not less than four months prior to an election in order to be qualified to vote.  The

Court held the restriction violative of the Equal Protection Clause and, on its own authority, cut the requirement down to thirty days.

See also enumeration of standing requirements in *K. P. v. LeBlanc*, 627 F. 3d 115, 122-24 (5th Cir. 2010):

> (1) Injury-in-fact.  Plaintiffs were denied the right to have their vote counted ("No right is more precious in a free country. . .");
>
> (2) Causation.   Disenfranchisement was the act of the Defendants.  All involved election officials in the state had honored Plaintiffs' votes: the Smith County Election Commission, the office of the Secretary of State, the Secretary of State and the Governor; and
> (3) Redressability: "[A] plaintiff satisfies the redressability requirement when he shows that a favorable decision will relieve a discrete injury to himself.  He need not show that a favorable decision will relieve his *every* injury," quoting *Larson v. Velente*, 456 U.S. 228 (1982).

## VI.  SECTION 1983

In *Will v. Michigan Dept. of State Police*, 491 U. S. 58, 66 (1989), the Supreme Court stated:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties.  The Eleventh Amendment bars such suits unless the State has waived its immunity.

Although the Court holds in *Will* that the state is not a person within the meaning of Section 1983, the subsequent jurisprudence is as muddled as the Eleventh Amendment cases discussed above.  Thus, *Zinermon v. Burch*, 494 U. S. 113, 125 (1990) followed *Will* by one year and held that a plaintiff may bring suit under Section 1983 for state officials' violation

12

of his rights, *e.g.*, freedom of speech or freedom from unreasonable search and seizures.

The Fifth Circuit in *Horton v. Mississippi State Senate*, 68 F. 3d 468, 468 (5th Cir. 1995) stated:

> Moreover, "a state official in his or her official capacity, when sued for injunctive relief, would be a person under §1983 because 'official-capacity actions for prospective relief are not treated as actions against the State." . . . Therefore, the district court erred in finding Horton's complaint barred by the Eleventh Amendment and also in finding, alternatively, that the state is not a person under § 1983 in this instance.

The *Horton* case addressed an allegation that an enacted statute was unconstitutional and the Court noted that the proper defendant would likely be the state agency or an official charged with enforcing that act not the Mississippi State Senate. But here it is the Mississippi House of Representatives which has denied Plaintiffs their constitutional right to vote, not by participation in the enactment of unconstitutional legislation, but by acting in a non-legislative role in electing a representative and disenfranchising qualified voters in the process.

The Court should consider the Mississippi House of Representatives a "person" for purposes of Section 1983, just as it has considered a municipality a "person" for purposes of Section 1983. *Monell v. Dept of Social Services of the City of New York*, 436 U. S. 658 (1978). The Mississippi House of Representatives is clearly not "the state." It cannot act to adopt legislation without concurrence of the Mississippi Senate nor can it be assured that, even with agreement of the Senate, legislation will not be vetoed by the Governor. It cannot

act for the State.

In *Bond v. Floyd*, Mr. Bond sued the Speaker of  the Georgia House of Representatives and, among others, a select number of members of the Georgia House of Representatives as representating that body.  Here, Plaintiffs have named the Speaker of the House, and the four members of the Committee which illegally recommended the disenfranchisement of Plaintiffs' votes.  They are the actors who set the process in motion that rejected those votes.  The Speaker appointed the Committee.  The Committee members acted.  The Committee's chairman Mark Baker presented the report to the House which was adopted with no other House member speaking in support of the action taken.  As in *Bond*, the Court should consider these members of the House of Representatives representative of the entire body.  If the Court is constrained not to find the Plaintiffs entitled to proceed under Section 1983 in this manner, they are separately filing a motion for leave to amend their complaint to name as defendants all 122 members of the Mississippi House of Representatives, clearly persons under Section 1983 jurisprudence.

## VII.  ALLEGATIONS OF COMPLAINT ARE ADMITTED<br>FOR PURPOSES OF MOTION TO DISMISS

Although the Defendants attack Plaintiffs' Complaint on Motion to Dismiss, they repeatedly reference issues that involve evidentiary determinations.  They falsely suggest that two Plaintiffs, Keyes and Allen, do not believe their votes were invalidated.  Brief in Support of Motion to Dismiss for Failure to State a Claim, p. 3, n. 4 and Brief in Support of Motion to Dismiss for Lack of Jurisdiction, p.3, n. 2.  But Keyes and Allen – as the other three

Plaintiffs – all allege that they do "not know" if their votes were counted, Complaint ¶¶ 9, 10, 11, 12 and 13, because the Special Committee "at no place identified which affidavit ballots were counted and which were not."  Complaint, ¶ 8.  Evidentiary issues cannot be resolved on a motion to dismiss.  The allegations of the Complaint, for purposes of a Motion to Dismiss, are deemed admitted.  Thus, Defendants admit:

> The result of the District 79 race was a tie between Blaine "Bo" Eaton and Mark K. Tullos.  The official vote count for Jasper County, Mississippi was duly certified to the Secretary of State of the State of Mississippi.  The official vote count of Smith County, Mississippi was duly certified to the Secretary of State of the State of Mississippi on November 12, 2015.

> Pursuant to state law, Miss. Code § 23-15-605, on November 20, 2015, the Governor of the State of Mississippi and the Secretary of State of the State of Mississippi in the presence of Mr. Tullos and Mr. Eaton determined the election "by lot, fairly and publicly drawn."  Mr. Eaton was declared the lawful winner of State Representative from District 79.

> Despite the state law and his commitment to abide by same, Mr. Tullos had on November 19, 2015 filed a petition to contest the election in the Mississippi House of Representatives.

> When the 2016 Session of the Mississippi Legislature convened, Mr. Eaton was duly sworn in and took his seat as the duly elected Representative of District 79 in the Mississippi House of Representatives.

> A Special Committee appointed to consider the election contest filed by Mr. Tullos held hearings on January 14, 2016 and January 15, 2016.  The Special Committee adopted a Resolution which recommended that Mr. Tullos be seated as the Representative for District 79.  The Resolution recited that the Special Committee determined not to count five ballots cast pursuant to Mississippi's affidavit statute, Miss. Code § 23-15-

13.  The Smith County Election Commission had counted such ballots.  The Special Committee at no place identified which affidavit ballots were counted and which were not.  The Resolution of the Special Committee was adopted by the full House of Representatives on January 20, 2016.

Thirty persons voted by affidavit ballot in Smith County on November 3, 2015.  The Smith County Election Commission duly investigated all 30.  The Commission found nine votes were qualified in the precinct where they appeared to vote, including the five plaintiffs and four other persons.  The Commission found that 21 other affidavit voters were not qualified.  The Special Committee, individual Defendants and the Mississippi House of Representatives accepted those findings of the Election Commission.

The five plaintiffs, and the four affidavit voters not named plaintiffs herein, are entitled to know whether their votes were counted.  Miss. Code § 23-15-573(4).  The Special Committee, individual Defendants and House of Representatives by failing to disclose the five affidavit ballots which they threw out have prevented any of the nine affidavit voters from knowing whether their votes counted.

Philip Gunn is the Speaker of the Mississippi House of Representatives.  He presides over sessions of the House, appoints its committees, signs its acts and resolutions and has general control of the Hall of the House.  The Defendant Gunn appointed the Special Committee; presided over the House proceedings.

The Defendants Mark Baker, Richard Bennett, Charles Jim Beckett and Bill Denny are members of the Mississippi House of Representatives and of the Special Committee. Each of them voted to deny the federal constitutional rights of the Plaintiffs. The Special Committee vote was 4-1.

16

Defendants argue that *Rush v. Ivy*, 853 So. 2d 1226 (Miss. 2003) justifies the position of the Special Committee.  But *Rush v. Ivy* addressed a municipal election where the law in effect required that a voter registered in the county should be deemed registered to vote in a municipality, even though not registered in the municipality.  That section of the law, Miss. Code § 23-15-14, was repealed.  Furthermore, the Legislature has enacted laws subsequent to *Rush v. Ivy* which do not require that a registered voter who moves within the county must go to the Circuit Clerk's office and change his voting precinct.  Miss. Code § 23-15-11 amended by Laws 2012 states that "every inhabitant of the state, not adjudicated *non compos mentis*, who is a citizen of the United States, 18 years of age, who has resided in the state and county for 30 days where he seeks to vote, who has not been convicted of voter fraud and certain other crimes and is registered under Miss. Code § 23-15-13, "shall be a qualified elector in and for the county, municipality and voting precinct of his residence."  Miss. Code § 23-15-33 states that:

> Every person entitled to be registered as an elector in compliance with the laws of this State and who has signed his name on and properly completed the application for registration to vote shall be registered by the registrar in the voting precinct of the residence of such person through the Statewide Elections Management System (SEMS).

There is no requirement that a person who moves must register his move with the Circuit Clerk to protect that right.  That is why the Secretary of State's office advised the Smith County Election Commission that any person registered to vote who appeared at the precinct of his correct address was entitled to vote.

The recited justification for the action taken has been rejected by opinion of the Attorney General of the State of Mississippi.  Attorney General Opinion, 1987 WL 121651 (Miss. A.G.).  It has been rejected by the Secretary of State, the office charged by law with supervision of state elections.  It has been rejected by the Help America Vote Act, 52 U.S.C. § 21082, which has been recognized by act of the Mississippi Legislature.  The Help America Vote Act does not apply to state elections but its provisions are certainly persuasive and represent good policy.  See *Florida Democratic Party v. Hood*, 342 F. Supp. 2d 1073, 1079-80 (N. D. Fla. 2004):

> HAVA's provisional voting section in effect adopts a "perfect knowledge" approach.  If a person presents at a polling place and seeks to vote, and if that person would be allowed to vote by an honest election worker with perfect knowledge of the facts and law, then the person's vote should count.  The difficulty, of course, is that when the person presents, the election worker may not have perfect knowledge; the facts are not always at hand.  It is this difficulty that provisional voting seeks to address.  The person who claims eligibility to vote, but whose eligibility to vote at that time and place cannot be verified, is entitled under HAVA to cast a provisional ballot.  On further review – when, one hopes, perfect or at least more perfect knowledge will be available – the vote will be counted or not, depending on whether the person was indeed entitled to vote at that time and place.  It is as simple as that.

Finally, the action of the Mississippi House of Representatives is contrary to the position taken by the Defendant Speaker of the House in prior judicial proceedings where he was participant in an election contest:

> There are seven voters who moved within Hinds County from one precinct to another and more than thirty days before the election.  Their voter registration was still at their old address, but in accordance with the law, they voted by affidavit ballot at their new address.    The HCEC (Hinds County Election Commission) has refused to count these affidavit ballots saying that § 23-15-13, Miss. Code Ann., attached hereto as Exhibit ~~K~~ k requires a voter who moves more than thirty days before the election to make a written request of the clerk to transfer his voter registration to his new precinct; otherwise said voter is not allowed to vote by affidavit ballot.
>
> <u>Such an interpretation of this statute is incorrect</u>. (emphasis added) See Complaint # 21.

While the House of Representatives purported to deal only with the election of a Representative for House District 79, they also disenfranchised the votes cast by qualified voters for Governor, Lt. Governor, Secretary of State, Attorney General, State Auditor, State Treasurer, Commissioner of Agriculture and Commerce, Commissioner of Insurance, Public Service Commissioner for the Southern District, Transportation Commissioner for the Southern District, District Attorney for District 13, State Senate for District 41, Circuit Court Judge for District 13, Smith County Chancery Clerk, Smith County Circuit Clerk, Smith County Coroner, Smith County Sheriff, Smith County Superintendent of Education, Smith County Tax Assessor, for Supervisor, Justice Court Judge and Constable in applicable districts and posts and with respect to Initiative Measure No. 42.

## VII.  <u>REMEDY</u>

As discussed above, the federal courts are simply not impotent in the face of violation of federal constitutional law.  Former Chief Justice William Rehnquist discussed protection

of the supremacy of federal law in *Green v. Mansour*, 474 U. S. 64, 68 (1985) and noted that the *Ex Parte Young* doctrine which allows prospective relief under the Eleventh Amendment "gives life to the Supremacy Clause." He also noted the availability of declaratory relief by the Court, even if a prospective injunction were not awarded.

Justice Scalia made observations to the same effect in *Morales v. Trans World Airlines, Inc.,* 504 U. S. 374, 381 (1992) where he noted the exception created in *Ex Parte Young* which allowed litigation to proceed against state attorneys general where plaintiffs faced threatened enforcement of penalties by those states, through their attorneys general, absent some injunctive or declaratory relief in federal court.

Here, the Plaintiffs seek to vindicate their federal constitutional right to vote in a federal court. If their votes are counted, the result is that the party illegally selected a Representative from District No. 79 by the Mississippi House of Representatives could be reversed. This has not posed an impediment to such relief in the past. In *Bell v. Southwell*, 376 F. 2d 659, 662 (5th Cir. 1967) the Fifth Circuit stated:

> Drastic, if not staggering, as is the Federal voiding of a State election, and therefore a form of relief to be guardedly exercised, this Court [has]. . . expressly recognized the existence of this power.

The Defendants here seek to avoid examination of the evidence underlying the unconstitutional deprivation of plaintiffs' rights. This Court should summarily overrule all three motions to dismiss. Upon hearing the case, if the Court finds violation of plaintiffs'

constitutional right to vote, the Court has a myriad of remedies available to it.  Kenneth W.

Starr discussed those remedies in Federal Judicial Invalidation as a Remedy for Irregularities

in State Elections, 49 New York University Law Review 1092 (1974).  He noted:

> . . . equitable principles are fully applicable both in the initial
> determination of whether to grant relief and in the final judgment
> as to what form of remedy to award.  49 N.Y.U. Law R. at 1097.

He further noted:

> . . . the power of federal courts to invalidate an election already
> held.  49 N.Y.U. Law R. at 1098.

He observed that:

> The federal judge sitting as a Chancellor in equity may detect
> malfeasance, perhaps of an egregious nature, but nonetheless stay
> his hand in providing full relief.  49 N.Y.U. Law R. at 1099.

The point is that the federal court is not impotent to address the violation of federal

constitutional rights.

## VIII.  CONCLUSION

The Court should deny all three Motions to Dismiss.

DATED: June 27, 2016.

Respectfully submitted,

BILLIE FAYE KEYES, JOSHUA ALLEN,
COURTNEY RENA FORTUNE, KARLI FORD
MATTHEWS AND SHELTON S. MATTHEWS

BY: /s/  *John G. Corlew*
        JOHN G. CORLEW

21

John G. Corlew (MSB # 6526)
CORLEW MUNFORD & SMITH PLLC
4450 Old Canton Road; Suite 111 (39211)
Post Office Box 16807
Jackson, MS 39236-6807
Telephone: 601-366-1106
Facsimile: 601-366-1052
jcorlew@cmslawyers.com

William R Ruffin
Attorney at Law
12 N Third St Bay Springs, MS (39422-9798)
Post Office Box 565
Bay Springs, MS 39422-0565
Telephone: 601-764-4555
Facsimile: 601-764-2234
attywrr@bayspringstel.net

## CERTIFICATE OF SERVICE

I, John G. Corlew, hereby certify that I electronically filed the foregoing with the Clerk of Court using the ECF system which will automatically send email notification of such filing to the following:

Michael B. Wallace
mbw@wisecarter.com

DATED: June 27, 2016.

/s/ *John G. Corlew*
JOHN G. CORLEW